**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **CORNELIA AUDREY TURNER-MAYO;** | § | **CASE NO: 05-44726** |
| **aka CORNELIA TURNER-MAYO; aka ;** | § | |
| **aka AUDREY MAYO; aka CORNELIA A** | § | |
| **MAYO** | § | |
| Debtor. | § | |
| | § | **CHAPTER  13** |
| | § | |

**MEMORANDUM OPINION**

For the reasons set forth below, the Court finds that Chase Home Finance LLC's claim

shall be paid at an interest rate of 5.13% during the term of the plan.

**Background**

On April 23, 1996, Bobbie N. Mayo, Jr., and Cornelia Mayo executed a Note payable to

Lendex, Inc., in the principal amount of $60,620.00 with an interest rate of 8.50%.  On that same

day, the Mayos executed a Deed of Trust (the "Security Instrument") granting Lendex a security

interest in the Mayos' homestead located at 7950 Wilmerdean Street, Houston, Texas 77061 (the

"Property") to secure the Mayos' obligations pursuant to the Note.  Chase Home Finance LLC,

successor by merger to Chase Manhattan Mortgage Corporation ("Chase"), currently owns the

Note.

On September 12, 2005, Cornelia Mayo filed a voluntary petition under chapter 13 of the

Bankruptcy Code.[1]  On September 30, 2005, Chase filed a proof of claim ("Proof of Claim") in

the Debtor's bankruptcy case in the amount of $33,521.67.  The arrearage detail attached to the

Proof of Claim lists a principal balance in the amount of $34,200.37 with an interest rate of

8.50% and asserts arrearages in the amount of $8,492.35.  The arrearage claim is comprised of an

---

[1] Ms. Mayo's schedules state that she is currently separated from Mr. Mayo but list Mr. Mayo as a codebtor with
respect to the Chase mortgage loan.  On August 3, 2006, the Court entered an agreed order modifying the automatic
stay to allow Mr. and Mrs. Mayo to prosecute their divorce proceeding.

arrearage due in the amount of $5,738.79, post-petition attorney fees and costs in the amount of $125.00 and an escrow account shortage in the amount of $3,052.63, minus moneys held in suspense.

On December 23, 2005, Chase filed a motion for relief from the stay. The motion asserts that the total amount owed by the Debtor is $39,000.000, with a total arrearage amount of $11,805.25, which includes post-petition arrearages in the amount of $3,312.30. On January 13, 2006, the Debtor filed a response stating that she informed Chase that her Plan included Chase's entire claim in the amount of $39,000. On January 17, 2006, Chase withdrew the motion for relief from the stay.

On January 19, 2006, the Debtor filed a chapter 13 plan (the "Plan"). The proposed plan provides that the secured claim held by Chase in the amount of $33,521.67 with an interest rate of 5.13% will be paid through the Plan. No objections were filed.

On January 26, 2006, Chase filed an amended Proof of Claim ("First Amended Proof of Claim") in the amount of $39,891.19. The First Amended Proof of Claim again lists a principal balance in the amount of $34,200.37 with an interest rate of 8.50% and asserts arrearages in the amount of $6,114.89. The arrearage claim includes the following: (1) post-petition attorney fees and costs in the amount of $125.00; (2) an escrow account shortage in the amount of $1,939.79; (3) school taxes in the amount of $1,102.25; (4) county taxes in the amount of $1,163.81; and (5) interest due in the amount of $1,784.04.

On February 28, 2006, the Court entered an order confirming the Debtors' Plan as filed, paying Chase's claim at a rate of 5.13% through the Plan.

On April 17, 2006, the Debtor filed an objection to the First Amended Proof of Claim (the "Objection"). The Debtor objects to the arrearage amount claimed by Chase. The Debtor contends that, subsequent to the filing of the motion for relief from stay, the parties agreed that

the Chase's claim was in the amount of $39,000.  The Debtor further objects to the inclusion of additional interest charges above those set forth in the Plan.

On August 29, 2006, Chase filed a second amended proof of claim ("Second Amended Proof of Claim") in the amount of $39,000.00.  The Second Amended Proof of Claim mirrors the First Amended Proof of Claim except that the arrearage claim is reduced to reflect an adjusted escrow account shortage in the amount of $1,048.60.

The Court held an evidentiary hearing with respect to the Debtor's objection on October 16, 2006.  The Court found that the Second Amended Proof of Claim was accurate and held that Chase had an allowed claim in the amount of $39,891.19.  The Court concluded that the original Proof of Claim was filed by Chase in error, and had the error not occurred, the Plan would not have been confirmed since it would have failed to provide for Chase's claim in full. Nonetheless, the Plan as confirmed provides for an interest rate with respect to Chase's claim at 5.13% throughout the life of the plan, contrary to the rate of 8.50% provided for in the Note.  At the conclusion of the hearing, the Court questioned whether § 1322(b)(2), which precludes the modification of a claim secured only by a debtor's principal homestead, or the confirmed Plan under the doctrine of res judicata, determines the proper interest rate.  The Court invited the parties to submit briefs on the issue and took the matter under advisement.  No briefs were timely submitted.

## Analysis

The dispute in this case requires the Court to resolve the apparent tension between two provisions of the Bankruptcy Code.

Section 1322(b)(2) provides, in relevant part, that a debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave

unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).[2] Although § 1322(b)(2) authorizes debtors to modify the rights of secured claim holders, it explicitly prohibits a debtor from modifying the rights of holders of claims secured by the debtor's principal residence.

Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. 1327(a). The binding effect of a confirmed plan is broad. A final confirmation order is generally res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing. *See* 11 U.S.C. § 1327(a); 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (15th ed. rev. 2006); *In re Howard*, 972 F.2d 639, 641 (5th Cir. 1992); *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1049-50 (5th Cir. 1987).

Although § 1322(b)(2) & § 1327(a) generally exist without friction, this case illustrates the potential conflict. Here, the Debtor's Plan provides that Chase's claim will receive interest at a rate of 5.13% for the life of the Plan. Chase did not object to the proposed plan, and the Court entered an order confirming the Plan. No motion to reconsider or appeal was filed. Thus, pursuant to § 1327(a) and general principles of res judicata, the Debtor contends that the Plan is a final order that binds the parties. However, after confirmation, the parties learned that the interest rate scheduled in the Plan was incorrect and contrary to the rate provided in the Note. Chase contends that based on this error, the Plan is fatally defective since § 1322(b)(2) prohibits the Debtor from modifying its rights in bankruptcy.

---

[2] This provision is subject to an exception. Section 1322(b)(5) provides that, notwithstanding § 1322(b)(2), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment is due." 11 U.S.C. § 1322(b)(5).

Section 1322(b)(2) embodies Congress's intent that home mortgage lenders receive favorable protection in bankruptcy since they "encourage the flow of capital into the home lending market." *In re Bartee*, 212 F.3d 277, 292 (5th Cir. 2000) (quoting *In re Nobleman*, 508 U.S. 324 332 (1993)). Although the Court would not have confirmed the Plan had Chase brought the defect in the Plan's interest rate to the Court's attention, the Plan was, in fact, confirmed. *See*, *e.g.*, 11 U.S.C. §§ 1322(b)(2); 1325(a)(1).

Consequently, the Court must consider the effect of § 1327(a) which provides for the finality of confirmation orders.

> The purpose of section 1327(a) is the same as the purpose served by the general doctrine of res judicata. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order.
> …
> It is quite clear that the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code.

8 COLLIER ON BANKRUPTCY ¶ 1327.01[1] (15th ed. rev. 2006).

The Fifth Circuit has addressed the res judicata effect of the confirmation of a chapter 13 plan on creditors who fail to object to confirmation on at least three occasions. The Fifth Circuit first addressed the issue in *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir. 1985). In *Simmons*, the Court held that, where a secured creditor files a timely proof of claim and the debtor does not file an objection to the proof of claim, the debtor may not use the plan confirmation process to arbitrarily affect the validity of a lien or the amount of the secured claim whether or not the creditor objects to confirmation of the plan. *In re Simmons*, 765 F.2d at 552. A few years later the Fifth Circuit addressed whether a confirmed plan acts as res judicata where the plan included a provision that exceeded the Court's authority. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1049-50 (5th Cir. 1992). In *Shoaf*, the Fifth Circuit held that the confirmation of

a plan of reorganization that expressly released a third-party guarantor was to be given res judicata effect even though the bankruptcy court was without statutory authority to release the guaranty. *Shoaf*, 815 F.2d at 1051-54. Although the bankruptcy court exceeded its authority, the Fifth Circuit noted that the creditor had participated in the confirmation process and held that the plan was nonetheless res judicata. Finally, in *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir. 1992), the Fifth Circuit addressed the interplay between *Simmons* and *Shoaf*. The Court explained that *Shoaf* represents the general rule that a confirmed plan is res judicatata on the validity of the plan provisions subject to the limited exception set forth in *Simmons*. *In re Howard*, 972 F.2d at 641; *see also Internal Revenue Service v. Taylor (In re Taylor)*, 132 F.3d 256, 262 (5th Cir. 1998) (the *Simmons* line of cases represents the rule that, in the context of a secured claim, a confirmed plan does not substitute for an objection to a proof of claim). The *Howard* Court explained:

> We decline to hold, as the [debtors] urge, that any flaw in the provisions of a Chapter 13 plan may be objected to after confirmation. Such a holding would, as *Shoaf* recognizes, step too hard on the debtors' interest in finality after the confirmation of a Chapter 13 plan. We hold only that a debtor who wishes to challenge the amount of a secured claim either by asserting a counterclaim or offset against it or by disputing the amount or validity of the lien must file an objection to the creditors' claim in order to put the creditor on notice that it must participate in the bankruptcy proceedings. A Chapter 13 plan may by its very nature change the terms of payment and otherwise modify the terms of the debt underlying the lien. Creditors are put on notice of the possibility of these types of modifications by notice of the filing of a Chapter 13 proceeding and must object to the confirmation of a plan in order to prevent their effect. These plan provisions will be final as to all creditors in those respects because they do not conflict with other provisions of the bankruptcy code.

*In re Howard*, 972 F.2d at 642.

The Court is aware that other courts have refused to recognize the preclusive effect of a confirmed plan when it violates a provision of the Bankruptcy Code.[3]  However, this Court is bound by the Fifth Circuit.  In the present case, the Plan does not affect the validity of Chase's lien or the amount of Chase's secured claim.

Chase does not dispute that it received proper notice of the Debtor's Plan prior to confirmation.  Procedural due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present there objections."  *In re Christopher*, 28 F.3d 512, 516 (5th Cir. 1994).  Chase filed its original proof of claim on September 30, 2005, and filed a motion for relief from the stay on December 23, 2005.  These actions demonstrate that Chase had actual notice of the bankruptcy filing.  The Court's docket sheet reflects that on January 20, 2006, notice of the Debtor's Plan was sent to counsel for Chase.  The Plan was confirmed 39 days later.  Once Chase received notice of the Debtor's bankruptcy, it bore the burden of evaluating and protecting its rights in bankruptcy.  As stated by the Seventh Circuit:

> [I]t is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous.  As this court said in *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990), a creditor is not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings.  See also *In re Andersen*, 179 F.3d 1253, 1257 (10th Cir. 1999) ("A creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests); *In re Szostek*, 886 F.2d 1405, 1414 (3d Cir. 1989) (stating that creditors must take an active role in protecting their rights).

*In re Harvey*, 213 F.3d 318, 322 (7th Cir. 2000).

The Debtor's Plan clearly and conspicuously stated that it would pay interest on Chase's claim at the rate of 5.13%.  Although Chase listed the interest rate at 8.50% in its Proof of Claim,

---

[3] *In re Bateman*, 331 F.3d 821, 882 (11th Cir. 2003) (refusing to give res judicata effect to a plan that modified a secured claim in violation of § 1322(b)(2)); *In re Escobedo*, 28 F.3d 34, 35 (7th Cir. 1994) (declining to give res judicata effect to a plan that omitted priority claims).

the asserted rate is not conclusive.  A proof of claim executed and filed by a creditor is prima facie evidence of the validity and amount of the creditor's claim.  FED. R. BANKR. P. 30001(f).  Nothing in the Bankruptcy Code or Bankruptcy Local Rules gives any evidentiary effect to a secured creditor's asserted interest rate or valuation of collateral.  *See*, *e.g.*, *In re Hudson*, 260 B.R. 421, 430-31 (Bankr. W.D. Mich. 2001).  Indeed, the local rules provide that "The following provisions of the plan will be binding, notwithstanding any provision in a proof of claim to the contrary: (i) the interest rate to be paid on claims; (ii) the valuation of collateral; ...."  BANKRUPTCY LOCAL RULE 3015(a)(5).[4]

Chase could have acted prior to confirmation to protect its rights pursuant to § 1322(b)(2) and the Note.  It did not do so.  Chase has not alleged bad faith, fraud or any other basis under the Code for invalidating the confirmation order[5].  Although the Court would have raised the discrepancy with respect to the interest rate had it come to the Court's attention, the Court was unaware that the rate conflicted with the rate established by the Note.  The Court does not have an independent duty to scrupulously review each provision made for each creditor, and any related extrinsic documents.  In fact it is rare that a mortgage note which discloses all terms of the mortgage loan will be presented at an uncontested chapter 13 confirmation hearing.  Moreover, a debtor may modify the rights, including the interest rate, of a secured lender who

---

[4]  The debtor is *pro se* and filed a plan that was not in compliance with the official form of plan required by this District.  No party objected to the use of the non-uniform plan and the Court confirmed the plan as filed.  It is worth noting that the official form of plan required in the Southern District preserves the issue of the *amount* of claim for the claims objection process:  "The amount listed as the "Principal Amount of Claim for Arrearage" is the amount proposed by the debtor(s) in this Plan.  If the actual allowed claim is in a different amount, the amount paid pursuant to this Plan shall be the amount due on the actual amount of the allowed claim without the need of an amended plan.  The amount listed as "Amount of Estimated Periodic Payment" will be adjusted to reflect the actual amount of the allowed claim."  Uniform Plan, ¶ 4.  This Court's local rules and uniform plan were adopted after giving full consideration to *Simmons, Shoaf* and *Howard*.

[5]  The debtor is *pro se*.  Although she is charged with compliance with the law, there has been no allegation that her alteration of the interest rate was done in knowing violation of the law.  Had the same plan been proposed by counsel, issues with respect to the bona fides of the plan's proposal might be considered by the Court.

holds a lien secured by real property that is not the debtor's principal residence (e.g., a debtor's second home).

Because notice was adequate, Chase bore the burden to review the plan and raise any objections.  Once the confirmation order became final, Chase was estopped from collaterally attacking the confirmed plan.  *See*, *e.g.*, *Lester Mobile Homes Sales, Inc. v. Woods (In re Woods)*, 130 B.R. 204, 205-06 (W.D. Va. 1990).

The Court finds that the Code's provision that protects a mortgage lender must yield to the Code's policy of promoting the finality of the Court's confirmation order and principles of res judicata.  *See also In re Parker*, 148 B.R. 604, 606 (Bankr. D. Idaho 1992) (the court interpreted the apparent tension between §§ 502(a) and 1327(a)  as dictating that the plan binds the parties to the amount the trustee will distribute under the plan, but is not binding as to the amount of the claim).  Chase may not now raise an issue it could and should have raised during the confirmation process.

The holding in this case is consistent with Fifth Circuit precedent.  Chase will retain its lien and the amount of Chase's secured claim has not been altered by the Plan.  Only the interest rate to be paid during the term of the Plan is different than that set forth in the Note.

### Conclusion

For the reasons set forth above, the Court finds that the interest rate of 5.13% set forth in the Debtor's Plan applies to Chase's claim during the term of the Plan.

Signed at Houston, Texas, on February 8, 2007.

MARVIN ISGUR
United States Bankruptcy Judge